## Richmond

AMERICAN HOME ASSURANCE COMPANY v. SHIRLEY M. HUGHES, ADMX., ETC.

January 20, 1969.

Record No. 6832.

Present, All the Justices.

*John A. K. Donovan (John G. Turnbull; Donovan, Turnbull and Brophy,* on brief), for plaintiff in error.

*Herbert L. Karp (Earl F. Wagner,* on brief), for defendant in error.

SNEAD, J., delivered the opinion of the court.

On April 26, 1966, Shirley M. Hughes, Administratrix of the Estate of James R. Hughes, plaintiff, filed a motion for judgment against American Home Assurance Company, defendant. She sought to recover a judgment in the sum of $12,128.38, the unpaid balance on a mortgage, allegedly due her decedent's estate under "a group mortgage accident and health policy" issued by defendant. The defendant filed an answer in which it in effect denied liability and alleged, among other things, that the policy terminated on January 1, 1966, the date Hughes died. Prior to trial counsel stipulated:

"Now comes Earl F. Wagner, Esquire, attorney for the Plaintiff and John A. K. Donovan, Esquire, attorney for the Defendant, and, in aider of submitting this cause to the Court upon questions of law alone, agree upon the following stipulations and submit them, therefore, to the Court:

"1. That on or about the 1st day of May, 1964, the Defendant Insurance Company issued a * * * mortgage * * * accident and health policy for disability resulting from injury or sickness.

"2. That on or about the 18th day of May, 1964, the said James R. Hughes became totally disabled as the result of illness and remained totally disabled until his death on or about the 1st day of January, 1966.

"3. That the said mortgage concerning which the policy was issued is held and serviced by Weaver Brothers.

"4. That all of the payments to the mortgagee which would be due under the said policy have been paid to August, 1965; that the amount which would be due by mortgage payments from August, 1965 to the date of the death of the said subject would be $512.35.

"5. That the specimen copy of the policy attached hereto is a true specimen of the policy in effect in this case.

"6. That the issue of law before the Court is whether or not, under this policy contract, the estate of James R. Hughes is entitled to have the monthly payments on the mortgage paid to Weaver Brothers continuously or in any amount, from the date of said decedent's death on January 1, A. D., 1966."

By order entered June 21, 1967, the trial court adjudged that the plaintiff recover from the defendant "the monthly mortgage payments due Weaver Brothers in the amount of ONE HUNDRED, TWO and 47/100 DOLLARS, payable monthly, from the 1st day of January, 1966 until the balance due on said mortgage be paid * * *." We granted the defendant a writ of error and *supersedeas* to that judgment.

The sole issue presented in this appeal is whether the insurer, American Home Assurance Company, is liable under the terms of its policy for any monthly payments due on the mortgage of plaintiff's decedent after January 1, 1966, the date of his death.

The specimen copy of the group mortgage accident and health policy contained in the record provides that American Home Assurance Company agrees with the mortgagee (Weaver Brothers) as follows:

"That it will pay benefits for loss suffered by any Mortgagor of the Mortgagee becoming insured hereunder (herein called Insured Mortgagor) and resulting from injury or sickness, to the extent herein provided and subject to the exceptions, limitations and provisions of this policy.

\* \* \* \* \* \*

"PART I. MONTHLY BENEFIT: When as the result of injury or sickness, as hereinabove defined, the Insured Mortgagor is wholly and continuously disabled and prevented from performing each and every duty pertaining to his occupation for more than _____ days, the Company will pay periodically, commencing with the _____ day of such disability, a daily benefit calculated at the rate of one-thirtieth of the Monthly Benefit stated in the Certificate of Insurance issued to the Insured Mortgagor[1] for the period the Insured Mortgagor *is so disabled and under the regular and personal attendance of a legally qualified doctor of medicine or osteopathy other than himself*, not to exceed twelve consecutive months. After the payment of benefits for twelve consecutive months as aforesaid, and provided the Insured Mortgagor is wholly and continuously disabled and prevented by reason of the same injury or sickness from engaging in each and every occupation or employment for which he is qualified by reason of experience, education or training, *and continues under the regular and personal attendance of a legally qualified doctor of medicine or osteopathy other than himself*, the Company will continue to pay the daily benefit for so long as the Insured Mortgagor is so disabled, but in no event beyond the earliest of the following dates: (1) 25 years from the effective date of insurance of the Insured Mortgagor; (2) the date the Insured Mortgagor attains retirement; (3) the original expiration date of the Insured Mortgagor's indebtedness with the Mortgagee or the date on which said indebtedness is terminated by reason of prepayment, renewal, refinancing or otherwise. (Italics supplied.)

\* \* \* \* \* \*

"PART IV. INDIVIDUAL TERMINATIONS:

---

[1] The individual certificate of insurance issued to the insured mortgagor incidental to the group policy does not appear in the record. During oral argument before us counsel for defendant, without objection, distributed a specimen copy. It is labeled "Certificate of Mortgage Accident and Health Insurance." Similar provisions of "PART I. MONTHLY BENEFIT" are incorporated in the mortgagor's certificate of insurance.

"The insurance of any Insured Mortgagor shall terminate on the earliest of the following dates:

"(1) on the date this policy is terminated;

"(2) on the premium due date if the mortgagee fails to pay the required premium for the Insured Mortgagor, except as the result of inadvertent error;

"(3) on the Insured Mortgagor's premium due date next following the date the Insured Mortgagor attains retirement; or

"(4) on the original expiration date of the Insured Mortgagor's indebtedness with the Mortgagor [mortgagee] and the date on which said indebtedness is terminated by reason of prepayment, renewal, refinancing or otherwise.

"Termination of coverage of any Insured Mortgagor hereunder shall be without prejudice to any claim of such Insured Mortgagor existing prior to such termination for which benefits are otherwise payable.

\* \* \* \* \* \*

"PART IX. POLICY PROVISIONS:

"Physical Examination: The Company at its own expense shall have the right and opportunity to examine the person of the Insured Mortgagor when and as often as it may reasonably require during the pendency of a claim hereunder[2]."

The defendant contends that its insurance contract is a disability policy and not a life insurance policy; that it is unambiguous; that under the terms of the policy the insurer is not obligated to make the monthly payments on the mortgage after the death of the insured mortgagor, and that the trial court erred in ordering the company to make such payments.

On the other hand the plaintiff argues, in support of the trial court's judgment, that the policy does not inform the insured mortgagor "that once having become wholly and continuously disabled and after having received benefits pursuant to the terms of the contract, if he were to die, all benefits would cease". She says that if such were intended the policy should have specifically provided for the exclusion. Plaintiff points out that the only reference to "life"

---

[2] Similar provisions of "PART IV. INDIVIDUAL TERMINATIONS" and "PART IX. Physical Examination" are incorporated in the mortgagor's certificate of insurance.

or "death" appears in a provision under the heading of "Payment of Claims" wherein it is stated: "All indemnities under this policy shall be paid to the mortgagee to the extent of the Mortgagee's interest herein, and the balance, if any, shall be paid to the Insured Mortgagor if living, otherwise to the estate of the Insured Mortgagor. The interest of the mortgagee in this policy shall be the amount of the indebtedness, if any, owing by the Insured Mortgagor to the Mortgagee at the time claim is made." Thus, plaintiff says that the contract "contemplates a wholly and continuous disability" and death "is the most total, wholly continuous and permanent of all disabilities". In any event, she asserts that the insurance contract is ambiguous and subject to more than one interpretation and should be construed "strictly in favor of the insured and strictly against the insurer".

"Contracts of insurance are to be liberally construed in favor of the insured, but if they are plain and clear and not in violation of law or inconsistent with public policy, we are bound to adhere to their terms. It is the function of the court to construe the language of the contract as written, and the court cannot make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer." (Citing cases.) *Pilot Life* v. *Crosswhite*, 206 Va. 558, 561, 145 S.E.2d 143.

The policy here involved is a disability policy and not a life insurance policy. It is clear and unambiguous. Under the provisions of "PART I. MONTHLY BENEFIT", *supra,* the company agrees to pay benefits while the insured mortgagor "is wholly and continuously disabled" as the result of "injury or sickness" for the period the insured mortgagor "is so disabled and under the regular and personal attendance of a legally qualified doctor of medicine or osteopathy other than himself, not to exceed twelve consecutive months". It further provides that after benefits have been paid for that period of time the company will continue to pay benefits until the occurrence of certain events not here pertinent, so long as the insured mortgagor "is wholly and continuously disabled * * * and continues under the regular and personal attendance of a legally qualified doctor of medicine or osteopathy other than himself * * *".

As was said in *Ferguson* v. *Penn. Mut. Life Ins. Co.,* 305 Ill. App. 537, 542, 27 N.E.2d 548, 550, "Disability presupposes life. Death is the antithesis of life." The insurer reserved the right to examine the person of the insured "during the pendency of a claim". After

Hughes' death he could no longer be "under the regular and personal attendance" of a doctor of medicine, which was a condition precedent to the requirement that benefit payments be continued. Clearly, this language imports an intent that the insured mortgagor be alive as a prerequisite to the payment of benefits. When Hughes, the insured mortgagor, died he ceased to be "disabled" within the meaning of the policy in question.

We hold that the insurer, American Home Assurance Company, is not liable under the terms of its policy for any monthly payments due on the mortgage of plaintiff's decedent after January 1, 1966, the date his death occurred.

The judgment appealed from is accordingly reversed and final judgment entered here for defendant.

*Reversed and final judgment.*