AMERICAN MOTOR INNS, INC., a Virginia corporation, and Flamboyant Investment Co., Ltd., a U.S. Virgin Islands corporation and a wholly-owned subsidiary of American Motor Inns, Inc., and Atlas Motor Inns, Inc., a Virginia corporation and a wholly-owned subsidiary of American Motor Inns, Inc., Plaintiffs,

v.

HARBOR INSURANCE COMPANY, a California corporation, and Affiliated FM Insurance Co., a Rhode Island corporation, and Richard Utesch, a citizen of Florida, Defendants.

Civ. A. No. 82–0383(R).

United States District Court,
W.D. Virginia,
Roanoke Division.

May 9, 1984.

S.D. Roberts Moore, James R. Austin, Gentry, Locke, Rakes & Moore, Roanoke, Va., for plaintiffs.

John L. Walker, Jr., James W. Jennings, Jr., John D. Eure, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for Harbor Ins. Co.

Andrew P. Miller, Alexandria, Va., Michael E. Nannes, Dickstein, Shapiro & Morin, Washington, D.C., for FM Ins.

Richard M. Thomas, Lichtenstein, Weckstein & Raney, Roanoke, Va., Peter A. Martin, P.A., Olathe, Kan., for Utesch.

## MEMORANDUM OPINION

TURK, District Judge.

This declaratory judgment action is before the court on cross-motions for summary judgment. The parties have conducted discovery and extensively briefed the issues, and the court has heard oral argument. The summary judgment motions are now ripe for a decision by the court.

### I.

This controversy tragically arose when Richard Utesch (Utesch) became a quadriplegic as a result of an accident that occurred at the Frenchman's Reef Holiday Inn, which is located on the island of St. Thomas in the United States Virgin Islands. The Holiday Inn at Frenchman's Reef was owned (at all relevant times to this litigation) by Flamboyant Investment Co., Ltd., (Flamboyant), a wholly owned subsidiary of American Motor Inns, Inc., (AMI). Flamboyant leased the Frenchman's Reef Hotel to Atlas Motor Inns, Inc., (Atlas), another wholly-owned subsidiary of AMI. Utesch won a substantial jury verdict (6.8 million dollars)[1] against Atlas (2.0 million dollars), Flamboyant (3.2 million dollars), and Holiday Inns, Inc. (1.6 million dollars). The case was appealed, and the Harbor Insurance Co., (Harbor) settled the claims against Atlas and Holiday Inns for 2.5 million dollars before an appellate decision was reached. The jury verdict against Flamboyant was reversed by the Third Circuit but Flamboyant settled with Utesch for 1.9 million dollars before the scheduled new trial. The primary issue before this court is whether Flamboyant was a covered insured at the time of the Utesch accident under the same Harbor policy that provided coverage for Atlas and Holiday Inns.[2]

Harbor's Policy No. 131516[3] (the Policy or Harbor's Policy), which was in effect at the time of the Utesch accident, provided that the insured would pay premiums on a percentage basis of the insured's total receipts for the one year period. The policy stated that the insured would pay an estimated premium at the beginning of the coverage and this would be adjusted at the end of the term in accordance with the insured's actual receipts.[4] An insured was defined under the policy as follows:

---

1. The actual award was 8 million dollars, but the Virgin Islands is a comparative negligence jurisdiction and the plaintiff's own negligence reduced the award to 6.8 million dollars.

2. Harbor does not contest its coverage obligation to Atlas and Holiday Inns. Atlas is a named insured under Harbor's policy and by contract Atlas had assumed certain contract obligations to Holiday Inns, which obligations Harbor apparently has honored.

3. In 1975, AMI had an insurance carrier for its continental United States' operations (American Insurance Company) and for its Caribbean operations (Commonwealth Insurance Company of Puerto Rico). The Commonwealth policy covered the Frenchman's Reef operation at the time of the Utesch accident. Unfortunately, Commonwealth went into Bankruptcy and has not been able to honor this obligation. When American Insurance, the domestic carrier, gave notice in 1976 that it was terminating its relationship with AMI, AMI proceeded to search for a new domestic carrier. Harbor, in essence, became this domestic carrier for AMI and AMI became an insured under Harbor's policy No. 128086. This policy ran from August 15, 1976, through August 15, 1977. This same policy was basically re-executed ·and AMI became an insured under Harbor's policy No. 131516 which was in effect from August 15, 1977, until August 15, 1978.

4. The policy provided that the insured would deposit a premium, which would be adjusted at the end of covered period depending on the gross receipts. In fact, AMI sought to recover the premium based on receipts submitted on behalf of the Frenchman's Reef location for profits before February 15, 1978 because AMI at

NAMED INSURED: As stated in Item 1 of the Declarations forming a part hereof and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company. (Hereafter called the "Named Insured")

Endorsement 10 of the policy listed 33 named insureds for which a premium was paid, but Flamboyant was not listed on this endorsement. By endorsements 12 and 13, which became effective on February 15, 1978, the Frenchman's Reef location and Flamboyant became insureds under the policy. An additional premium was paid to effectuate this new coverage.[5] The effective date of these endorsements (12 and 13) was February 15, 1978, which was after the Utesch accident (October 18, 1977).

The plaintiffs have filed this declaratory action seeking a determination that Flamboyant is an insured under Harbor's Policy No. 131516. The plaintiffs and Harbor have moved for summary judgment on this issue. A secondary issue concerns which party and which funds will be used to pay the first $300,000 of the 2.5 million dollar settlement that Harbor entered into on behalf of Atlas and Holiday Inns. Harbor's policy coverage begins at the $300,000 level and the parties are disputing who will pay this amount and whether AMI's attorneys' fees will be part of the $300,000. The court will address these issues in successive order.

## II.

■ An insurance policy is a contract for which adequate consideration must be paid.

If an insured does not give consideration for a given risk then no contract exists between the insurer and the insured for that risk. *See* 1 Couch on Insurance § 2.5 (1984). In the instant case, Flamboyant had not paid a premium to Harbor for any liability coverage at the time of the Utesch accident. Indeed, Flamboyant did not contract for coverage until after the Utesch accident. Since no premium had been paid, Flamboyant did not have a contract with Harbor for insurance coverage at the time of the Utesch accident.

■ In addition, it is clear that under the terms of the policy, AMI was required to give notice to Harbor of the existence of any subsidiary (e.g., Flamboyant)[6] in order to provide coverage for that subsidiary. The policy provided that any subsidiary in existence at the beginning of the contract or those "hereafter constituted" would become an insured, if prompt notice were given to Harbor. Once notice was given to Harbor, Harbor could charge an additional premium for the new insured. For example: By endorsement # 10, AMI gave Harbor notice of 33 such companies (and paid a premium for the increased coverage), though Flamboyant was not included. In fact, Harbor did receive notice and did charge an additional premium for Flamboyant, but not until after the Utesch accident. In short, since there was no separate insurance contract specifically covering Flamboyant, and since the plaintiffs had failed to comport with the terms of the existing contract so as to extend coverage to Flamboyant, defendant Harbor's motion for summary judgment must be granted as to this issue.[7]

that time (April 20, 1979) apparently took the position that Frenchman's Reef was not covered under the Harbor policy until February 15, 1978 (after the Utesch accident).

5. Part B of Harbor's Policy provides as follows:
ADDITIONAL INSUREDS
In the event of additional insureds being added to the coverage under the underlying insurances during currency hereof prompt notice shall be given to the Company hereon *who shall be entitled to charge an appropriate additional premium hereon.* (emphasis added)

6. The court has not decided whether Flamboyant was a subsidiary, affiliated, associated or controlled company under the policy. The court does decide, however, that AMI had to give notice to Harbor of Flamboyant, regardless of Flamboyant's particular classification, and that this lack of notice bars plaintiffs' claim.

7. The court does not address Harbor's allegation of material misrepresentation since the court finds that no contract of insurance existed and that Flamboyant was not a covered insured.

## III.

■ The court now addresses the second issue, which consists of two sub-issues. The plaintiffs assert that they have coverage for the Utesch accident with Affiliated FM Insurance Co. (Affiliated). The Affiliated policy, which provides a layer of insurance beneath the Harbor policy, has coverage up to $300,000 (which is where Harbor's policy begins), and has a provision for the reimbursement of attorneys' fees. Thus, if Affiliated's policy covers the accident, it will pay the first $300,000 of Harbor's settlement on behalf of Atlas and Holiday Inns, and it will reimburse Atlas and Holiday Inn for their litigation costs in defending the Utesch action. In that event, the current dispute between AMI and Harbor as to attorneys' fees will be moot. On the other hand, if it is held that there is no coverage under the Affiliated policy and if Atlas and Holiday Inns must ultimately pay the first $300,000 of the settlement, plaintiffs maintain that the litigation costs must be deducted from the $300,000, before the extent of the excess coverage claim is determined.[8] Harbor, of course, maintains that the payment of litigation costs is a matter separate and distinct from that of liability coverage under the terms of the contract. The court will initially address plaintiffs' allegations as regards Affiliated.

### A.

Affiliated's policy No. 0100039 which ran from August 15, 1977, until August 15, 1978, was in effect at the time of the Utesch accident.[9] The policy provided that Affiliated would be potentially responsible for a claim of up to $300,000. Endorsement 7 included Atlas as a named insured.[10] However, the Frenchman's Reef site was not listed among the covered locations in endorsement 8. In the policy, it was specified that these sites were where the Insured "usually conducted" its business.[11] All of the locations listed in endorsement 8 were in the continental United States.

The court also notes that the Utesch accident occurred in October 1977. However, plaintiffs did not notify Affiliated of this accident until March 1980 when AMI filed a declaratory judgment in this court against Affiliated.[12] Under the terms of Affiliated's policy, the insured was required to give written notice of an accident to Affiliated as soon as was practicable.[13] Furthermore, while the insured was required to promptly forward all legal pro-

---

**8.** AMI agreed by consent, in an earlier court order, that Harbor's coverage for the Utesch accident would begin at the $300,000 level. *See American Motor Inns v. Affiliated FM Insurance Co., et al.,* C.A. No. 80–0075 (W.D.Va.1981). The order provided in part as follows:

    A. AMI and Harbor agree that from August 15, 1976, through February 14, 1978, Harbor was the excess insurer for AMI and as such, has the obligation to provide insurance coverage to AMI pursuant to the terms of the insuring agreements of Harbor's policies numbered 128086 and 131516, beginning at the financial level of $300,000.00 and continuing up to $5,300,000.00, except that it is specifically agreed by the parties that in all events Harbor has no obligation to insure AMI for any liability which AMI may have under $300,000.00.

**9.** Affiliated, like Harbor, was hired by AMI to replace its domestic carrier.

**10.** AMI does not contend that Flamboyant was a covered insured under Affiliated's policy.

**11.** Endorsement 8 of the Affiliated policy provided as follows:

    "It is understood and agreed that the following is a list of addresses at or from which the operations of this Insured are usually conducted and their respective location designation[.]

**12.** In that litigation, AMI's claim against Affiliated was dismissed without prejudice.

**13.** The notice requirement in the Affiliated policy provided as follows:

    (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

cess to Affiliated, AMI did not forward the Utesch papers at any time.[14]

■ Considering these undisputed circumstances, the court concludes that Affiliated does not bear responsibility to plaintiffs for any part of the Utesch settlement. It is clear that the intent of the parties was for the Affiliated policy to cover AMI's domestic operations and, indeed, endorsement 8 listed only domestic locations. *See American Home Assurance Company v. Hughes*, 209 Va. 514, 165 S.E.2d 411 (1969) (court should interpret the parties' intent under the contract). Frenchman's Reef simply was not a covered location under Affiliated's policy. Further, when AMI waited two and one half years to inform Affiliated of the Utesch accident, it breached the notice requirement of the policy, thus barring a recovery from Affiliated. *See Liberty Mutual Insurance Co. v. Safe-Co Ins. Co.*, 223 Va. 317, 288 S.E.2d 469 (1982). Accordingly, Affiliated is not responsible for the loss and Affiliated's motion for summary judgment must be granted.

### B.

■ Finally, the court addresses whether Harbor or plaintiffs should bear the litigation costs in defending the Utesch action brought against Atlas and Holiday Inns.[15] AMI seeks to have these litigation costs deducted from the $300,000 which Harbor's policy does not cover. Harbor counters that AMI should pay the first $300,000 of the Utesch settlement and bear its own costs of litigation.

This issue turns on an interpretation of the contract between Harbor and the plaintiffs. The policy provides as follows:

The company hereon shall only be liable for the Ultimate Net Loss the excess of either (a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances or (b) $25,000 Ultimate Net Loss in respect of each occurrence not covered by said underlying insurance; (hereinafter called the "underlying limits"); and then only up to a further sum as stated in Item 2(a) of the Declarations....[16]

The underlying insurance as referred to above was clearly intended to be that carried generally by Affiliated, covering the first $300,000 of a loss. Thus, under its policy, Harbor would be responsible for the "Ultimate Net Loss" above $300,00. "Ultimate Net Loss" was defined under the policy as follows:

The "Ultimate Net Loss" shall mean the total sum which the Insured, or his Underlying Insurers as scheduled, or both, become obligated to pay by reason of personal injuries, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, *charges and law costs*, premiums on attachment or appeal bonds, interest, expenses for doctors, *lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence cov-*

---

**14.** The provision for forwarding lawsuit papers provides as follows:

If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

Since AMI did not forward any suit papers to Affiliated, its request for attorneys' fees reimbursement from Affiliated must be denied.

**15.** Since Flamboyant is not a named insured under the Harbor policy it cannot recover attorneys' fees from Harbor.

**16.** Inasmuch as the parties agreed by court order that $300,000 would be where Harbor's liability began, part (a) controls where Harbor's coverage picks up the Utesch loss. The court order did set the $300,000 limitation, but it also stated that this limitation was set in accordance with Harbor's policy. *See* footnote 8 *supra.* Thus, the court must examine Harbor's policy to resolve this controversy surrounding the allocation of attorneys' fees.

*ered hereunder,* excluding only the salaries of the Insured's or any underlying Insurer's permanent employees.

The Company shall not be liable for expenses as aforesaid when such expenses are included in *other valid and collectible insurance.* (emphasis added).

Thus, it would appear that under the clear terms of the policy Harbor would be responsible for litigation costs. Harbor counters, however, that it is not responsible for these costs since AMI breached a condition of the policy (condition S), so as to bar recovery of litigation costs. Condition S provides as follows:

MAINTENANCE OF AND RESTRICTIONS IN UNDERLYING INSURANCES. It is a condition of this Policy that the Policy or Policies referred to in the *attached "Schedule of Underlying Insurances" shall be maintained in full effect during the Policy period* without reduction of coverage or limits except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy. Failure of the Named Insured to comply with the foregoing shall not invalidate this Policy but in the event of such failure, the Company shall only be liable to the same extent as they would have been had the named Insured complied with the said condition. (emphasis added)

Harbor argues that AMI was required to maintain the underlying insurance and that if the underlying insurance was unavailable for any reason other than those set forth under condition S, Harbor's responsibility would remain limited to what it would have been had the Affiliated coverage been available. If Affiliated's coverage had been available, Affiliated would have paid AMI's litigation costs, thus relieving AMI of this responsibility.[17]

The court rejects Harbor's argument and finds that Harbor must reimburse AMI for the cost of defending Atlas and Holiday Inns in defending the Utesch action. The court finds that AMI did "maintain" the underlying insurance with Affiliated, since Affiliated's policy remained in effect at the time of the Utesch accident. Affiliated's coverage just did not cover this particular loss. Harbor argues that if coverage is denied, then this means it is not maintained. But condition S states that the underlying insurance "shall be maintained in full effect during the policy period." Since it is undisputed that underlying insurance with Affiliated was maintained and since it was in effect at the time of the Utesch accident, the court must conclude that no policy condition was breached. Accordingly, Harbor is responsible for litigation costs under the definition of "Ultimate Net Loss." AMI's motion for summary judgment on this issue will be granted.

An appropriate judgment and order consistent with this opinion will be entered this day.

17. Affiliated's policy provides as follows on attorneys fees:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury or (B) property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.