[No. B019934. Second Dist., Div. Six. Nov. 30, 1987.]

COLLEEN SILVA, Plaintiff and Appellant, v.
AETNA LIFE INSURANCE COMPANY, Defendant and
Respondent.

## COUNSEL

Shale F. Krepack, Silver, Kreisler, Goldwasser & Shaeffer and Nancy P. Culver for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, John H. Swenson, Mark E. Warren, Keith D. Ross and R. Gus Lehovck for Defendant and Respondent.

## OPINION

**WILLARD, J.***—Retired Colleen Silva sued Aetna Life Insurance Company and Crocker National Bank for breach of an insurance policy obligating Aetna to make mortgage payments due Crocker in the event plaintiff's husband, the insured, became disabled. Defendants moved for summary judgment and summary adjudication of issues. The motion of Aetna was granted and judgment was entered in its favor. Adjudication of certain issues was made in favor of Crocker. This appeal is solely from the judgment in favor of Aetna. We agree with the trial court that the insurance policy did not provide the benefits in dispute and affirm the judgment.

### FACTS

In 1975 appellant and her husband, the decedent, jointly purchased real property in Santa Barbara County. They, together with decedent's parents, obtained financing for the purchase from Crocker, who received a

---

\* Judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

mortgage. The mortgage required payments, including interest, of $900.71 per month for 30 years.

In June 1981, Crocker made arrangements with respondent for credit insurance against disability of Crocker's debtors. A group insurance policy was issued to Crocker applicable to a specific debt only at the election of the debtor, who paid the premium in monthly installments as an addition to his mortgage payment.

On three occasions Crocker mailed to appellant, her husband, and her husband's parents a brochure describing and soliciting the insurance. The brochure stated that only one debtor on each debt was eligible for the insurance. After discussions between decedent and appellant, decedent completed and submitted an application. A certificate of insurance, effective October 2, 1981, was issued to decedent. It contained a description of the group policy. Premiums applicable to decedent's age and the monthly mortgage payments were $39.55 per month.

In December 1982, decedent became ill. By December 24 he was totally disabled from working at his employment as a maintenance leader for the County of Santa Barbara. Pursuant to the insurance contract, respondent made the mortgage payments due Crocker by decedent and his family from January 24, 1983, until decedent's death on October 26, 1983. Payments were then discontinued. The primary issue on this appeal is whether the insurance policy obligated respondent to make the mortgage payments that became due subsequent to decedent's death.

The basic group policy issued by respondent to Crocker provided for payment of covered debtors' mortgage payments, not in excess of $1,000 per month, for not to exceed 24 months in the case of debtors under the age of 50. Decedent was under that age when he died, and nine payments had been made by respondent. At issue is the obligation to continue payments for 15 additional months. If respondent were so obligated, numerous additional issues relating to bad faith, tortious infliction of emotional distress, et cetera, would be involved. Inasmuch as we find respondent is not so obligated, the additional issues need not be decided.

The insurance policy issued to Crocker specifies benefits in section IX. Insofar as the issues of this case are concerned, benefits are provided while the insured is "totally disabled, as defined below, and remains continuously so disabled . . . ." The benefit period begins on the 31st day of disability and ends at the earliest of 4 specified events, including cessation of total disability, but not specifically mentioning death. It also provides that no benefit shall be payable "(a) for any period the debtor is not totally disabled;

. . . [or] (c) for any day on which the debtor is not under the care of a legally qualified physician or surgeon . . . ." Total disability and totally disabled are said to mean, "during the first twelve months of any one period of disability, that the debtor is unable, solely because of his disease or his accidental bodily injury, to work at his own occupation; and, thereafter during the continuance of such period of disability, that the debtor is unable, solely because of disease or accidental bodily injury, to work at any reasonable occupation for which he is reasonably fitted . . . ." It also affords respondent the right "to examine the person of the debtor whose injury or disease is the basis of claim when and as often as it may reasonably require during the pendency of a claim . . . ."

The insurance certificate issued to decedent stated on the first page that it was valid only as an attachment to the "Group Credit Accident and Health Insurance (Mortgage Insurance) Certificate of the Debtor issued under the policy . . . ." It named decedent as the debtor, specified October 2, 1981, as the date of insurance, and fixed the premium at $39.55 per month. A maximum benefit of payment for 2 years prior to age 50 and of 1 year from age 50 to age 65 was established. Next followed a certificate that the debtor had become insured under the policy. Attached were three pages that included verbatim the provisions described above from the policy.

Finally, of possible significance, is a brochure issued by Crocker, copies of which were mailed by Crocker to decedent and appellant, and as a result of which decedent applied for the insurance. The introductory paragraph of the brochure states: "If you became disabled, could you make your mortgage payments? When a serious disability strikes, your savings may quickly disappear. To help you protect your investment during a disabling injury or illness, we've made arrangements with the Aetna Life Insurance Company for a Mortgage Disability Insurance Plan." Under the heading, "Exclusions," it is stated that disability benefits will not be paid for, among other things,

"● Any period you are not totally disabled.

"● Any day on which you are not under the care of a physician . . . ."

In ruling on the motion of respondent for a summary judgment, the trial court stated, "[t]he Court grants summary judgment on the issue of the universal meaning of the term 'disability' as used in the policy."

### DISCUSSION

In support of the reasoning of the trial court, respondent argues that the commonsense meaning of the term "disabled" contemplates an animate,

living person. Some support for this position is afforded by one of the definitions of "disability" contained in Webster's Third New International Dictionary (1981) at page 642: "(4): a physical or mental illness, injury, or condition that incapacitates in any way . . . ." Some decisions so state. "Disability presupposes life. Death is the antithesis of life." (*Ferguson* v. *Penn. Mut. Life Ins. Co. of Philadelphia* (1940) 305 Ill.App. 537 [27 N.E.2d 548, 550].) "Plaintiff contends that the disability continued after his death, . . . [T]he best answer to this argument is . . . that after July 23, he was not disabled but dead." (*Hinkley* v. *Penn. Mut. Life Ins. Co. of Philadelphia* (E.D.Wash. 1941) 37 F.Supp. 1018, 1023.)

Conversely, appellant argues that the word "disability" includes death, quoting *Perez* v. *State Farm Mutual Automobile Ins. Co.* (1980) 289 Or. 295 [613 P.2d 32, 34]: "The word 'disability' is not ordinarily used to describe death, although death is undeniably the ultimate disability."

■ We find no "universal meaning" for the word as contained in insurance contracts. The fallacy of determining the meaning of words in a contract on the basis of a semantic plain meaning was exposed by Justice Traynor nearly 20 years ago. "When the court interprets a contract on this basis [plain meaning of language], it determines the meaning of the instrument in accordance with the '. . . extrinsic evidence of the judge's own linguistic education and experience.' (3 Corbin on Contracts (1960 ed.) [1964 Supp, § 579, p. 225, fn. 56].) . . . If words had absolute and constant referents, it might be possible to discover contractual intention in the words themselves and in the manner in which they were arranged. Words, however, do not have absolute and constant referents. 'A word is a symbol of thought but has no arbitrary and fixed meaning like a symbol of algebra or chemistry, . . .' [Citation.] The meaning of particular words or groups of words varies with the '. . . verbal context and surrounding circumstances and purposes in view of the linguistic education and experience of their users and their hearers or readers (not excluding judges). . . . A word has no meaning apart from these factors; much less does it have an objective meaning, one true meaning.' (Corbin, *The Interpretation of Words and the Parol Evidence Rule* (1965) 50 Cornell L.Q. 161, 187.)" (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage Etc. Co.* (1968) 69 Cal.2d 33, 36-38 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].)

If there were no other language in the insurance policy bearing on the meaning of "disabled" and "disability," coverage might well be afforded under the rule that uncertainty in an insurance policy is to be resolved against the insurer. (*White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881 [221 Cal.Rptr. 509, 710 P.2d 309].) ■ In the insurance policy

before us, however, there are three specific provisions that bear upon the meaning of "disabled" and "disability" as used in the policy: (1) "The terms 'total disability' or 'totally disabled' mean, during the first twelve months of any one period of disability, that the debtor is unable, solely because of his disease or his accidental bodily injury, to work at his own occupation; and, thereafter during the continuance of such period of disability, that the debtor is unable, solely because of disease or accidental bodily injury, to work at any reasonable occupation for which he is reasonably fitted by education, training, or experience, or, if the debtor is retired, the above terms mean his inability due to sickness or accidental bodily injury to engage in the usual activities of a person of like age and sex in good health."

(2) "No benefit will be payable under the group policy . . . (c) for any day on which the debtor is not under the care of a . . . physician . . . ."

(3) "The Insurance Company . . . shall have the right and opportunity to examine the person of the debtor whose injury or disease is the basis of claim when and as often as it may reasonably require during the pendency of a claim hereunder."

None of these three provisions is consistent with the concept that "disability" includes death. When a person dies, the resulting inability to work is due to lack of life, not disease or injury. He no longer is under the care of a physician, and there is no further opportunity for the insurer to examine his person.

Although it appears that California appellate courts have not considered the issue, courts in other states have consistently held that similar insurance policies do not provide disability benefits after the death of the insured.

In *Parrish* v. *Paul Revere Life Insurance Co.* (1981) 103 Mich.App. 95 [302 N.W.2d 332], the court interpreted a policy that provided for disability benefits "[i]f such sickness results in continuous total disability while this policy is in force and requires the regular and personal attendance of a licensed physician." (302 N.W.2d at p. 334.) The court concluded: "The trial court found that the policy is not ambiguous. It ruled that a reading of the policy could not lead one to reasonably expect that disability payments would continue after the death of the insured . . . . [¶] We agree. Under a common sense reading, the provisions excerpted above clearly envision that the insured be alive during the benefit period. [Citation.] . . . Plaintiff's

interpretation is inconsistent with the language requiring the regular and personal attendance of a physician." (*Ibid.*)

In *Lemaire* v. *Continental Casualty Company* (La.App. 1973) 284 So.2d 102, the policy provided in part: "Indemnity provided in this Part is payable only for a period of disability during which the Insured Mortgagor is under the regular care and attendance of a currently licensed physician . . . ." (At p. 103.) The court held that this provision, as well as a provision entitling the insurer to examine the insured as often as it may reasonably require during the pendency of a claim, could not be interpreted as providing coverage for death.

In *American Home Assurance Company* v. *Hughes* (1969) 209 Va. 514 [165 S.E.2d 411], the policy was quite similar to the one before us. It provided for payment of a mortgage obligation of the insured during disability caused by injury or sickness. As in the case here on appeal, it required that the insured be under a physician's care, and the insurance company was given the right to examine the insured from time to time during pendency of the claim. The court stated that after the insured's death "he could no longer be 'under the regular and personal attendance' of a doctor of medicine, which was a condition precedent to the requirement that benefit payments be continued. Clearly, this language imparts an intent that the insured mortgagor be alive as a prerequisite to the payment of benefits. When Hughes, the insured mortgagor, died, he ceased to be 'disabled' within the meaning of the policy in question." (165 S.E.2d at p. 414.)

■ Appellant makes an additional argument regarding the meaning of the policy. Under the heading "DISABILITY BENEFIT" it is stated that benefits will end on the first to occur of four specified dates. First specified is the date the debtor ceases to be totally disabled. The other three dates are irrelevant to the issues in this case. There is no mention of the date of the insured's death. In this connection appellant relies on well-established rules with respect to construction of insurance policies.

These include the rule, mentioned above, that any uncertainty or ambiguity is to be resolved against the insurer. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]; *State Farm Mut. Auto Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193 [110 Cal.Rptr. 1, 514 P.2d 953].) This rule has no application in the case before us, however, because the policy is not uncertain or ambiguous. The first date mentioned in the termination paragraph is the date that the debtor ceases to be totally

disabled. As explained above, "disability" in this policy does not include death. Therefore death terminates disability. Termination of the benefits at death is included in the first item of the paragraph. There was no need to include it in a second provision, and lack of such an additional provision does not lead to uncertainty or ambiguity.

■  A second rule relied upon by appellant is that the policy must be interpreted to give effect to the reasonable expectations of the insured. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263; *White* v. *Western Title Ins. Co., supra,* 40 Cal.3d 870.) Decedent applied for coverage in this case upon receipt of a brochure issued by Crocker Bank. The brochure begins by talking about "When . . . disability strikes," and offers help "during a disabling injury or illness." Under a prominent heading, "Exclusions," it warns that no disability benefits will be paid for "[a]ny day on which you are not under the care of a physician . . . ." It does not state that the mortgage will be paid off in the event of death, but rather states that "[s]hould you become disabled the plan would make your mortgage payments for you . . . for as long as two years . . . ." This brochure could not reasonably be understood to offer benefits following death of the insured.

When decedent's application was received, he was issued a certificate of insurance that quoted verbatim the provisions of the policy we have quoted above and which we find to extend benefits for disability only during the life of the insured. Decedent could not reasonably have expected that the policy would provide the additional benefits claimed by appellant.

■  Appellant relies on an additional argument—that an insurance broker who issued policies for respondent, but who had nothing to do with the issuance of this policy, told appellant following the death of her husband that in his opinion the policy benefits would not be terminated by death of the insured, but would continue for the balance of the original 24-month term. The broker was not an agent. His statements were made long after issuance of the policy and could not have been relied upon by the insured or appellant in connection with their application for the insurance. Inasmuch as he was not an agent of respondent, his statement could not amount to a contemporaneous interpretation of the policy by a party. This argument has no merit.

In view of our finding that the insurance policy here involved did not provide the benefits claimed by appellant, it is unnecessary to consider the

additional issues discussed in the appellate briefs, all of which become issues only if respondent wrongfully denied the benefits claimed by appellant.

The judgment is affirmed. The parties shall bear their own costs on appeal.

Stone, P. J., and Abbe, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 17, 1988.