# R. RAY WHITMER

v.

# GRAPHIC ARTS MUTUAL INSURANCE COMPANY

Record No. 910447

November 8, 1991

Present: All the Justices

*Matthew B. Murray (Richmond and Fishburne, on briefs), for appellant.*

*D. Brock Green (Jones and Green, on brief), for appellee.*

JUSTICE WHITING delivered the opinion of the Court.

To answer the question, we construe a fire insurance policy provision that fixes the amount of a policyholder's recovery after destruction of the insured property. We quote from the pertinent facts as set forth in the Fourth Circuit's order of certification:

> Whitmer purchased a homeowners policy from Graphic which included a provision for replacement cost for the real and personal property insured. The premium was computed on the basis of such coverage. On March 21, 1988, Whitmer's home was totally destroyed by fire. Graphic refused to make any payment under the policy to Whitmer, who had not replaced the realty or personalty destroyed, and Whitmer sued. Whitmer moved the district court, in limine, to limit the proof of damages at trial to replacement cost which mo-

tion was granted by the district court. The jury awarded Whitmer replacement cost which it found to be $201,536.60. Graphic appeals, arguing that Whitmer should first be required to replace the property before obtaining replacement cost. Graphic asserts that it believed that Whitmer burned his own property. It relied on arson as a defense at trial and lost. It does not appeal the judgment on the jury's findings as to arson. Neither does it contest the judgment on the jury's finding of the amount of replacement cost.

The following is the certified question:

Is the measure of damage in this case the replacement cost of the dwelling and personal property lost in the fire or is it the actual cash value thereof?

We look first at the endorsement by which Whitmer purchased additional coverage in the form of repair or replacement insurance on his residence. As pertinent, it provides:

1. Coverage A - Dwelling. The limit of liability is deleted. We will pay the full cost to repair or replace with no limit and *in accordance with the replacement cost conditions stated below.*

(Emphasis added.)

Those conditions, contained in part in the basic policy and in part in the replacement cost endorsement, are:

3. *Loss Settlement. Covered property losses are settled as follows*:

. . . .

[residence] full cost to repair or replace with no deduction for depreciation.

(1) Our liability for loss will be the smallest of these amounts:

(a) replacement cost of, or

(b) the actual or needed amount spent to repair or replace the damaged building or any part of it.

(2) *We shall not be liable for any loss for full cost to repair or replace . . . until the actual repair or replacement has been done.*

(3) At your option the cost to repair or replace can be determined at:

(a) date of loss, or

(b) date that repair or replacement is complete, provided it was completed with due diligence and dispatch.

(4) You may choose to disregard this condition in making claim hereunder. Such choice shall not prejudice your right to make further claim within 180 days after loss for any additional liability brought about by this policy condition.

(Emphasis added.)

The personal property replacement cost provisions are in two endorsements that provide in pertinent part:

1. We provide full replacement cost (rather than actual cash value) on personal property . . . .

   . . . .

2. REPLACEMENT COST

   a. We will pay . . . replacement cost [of personal property] at the time of loss without deduction for depreciation.

   . . . .

   b. [W]e will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is complete.

   c. You may make a claim on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

We also consider the following pertinent portion of the tenth condition of the property damage coverage conditions of the basic policy:

Loss will be payable 30 days after we receive your proof of loss and:

(a) reach an agreement with you;

(b) there is entry of a final judgment; or

(c) there is a filing of an appraisal award with us.

■ Both parties make persuasive arguments for their respective positions. Graphic argues that the defense of arson which it raises in good faith should not result in a loss of its contractual rights to require that the property be replaced before paying its replacement value. On the other hand, Whitmer contends that Graphic's right to require him to replace the destroyed property ought to be conditioned upon its prompt payment of the cash value of that property. Unless it is in violation of a statute, the policy language will control our answer to the question.

## I.

Whitmer bases his contentions upon three grounds. First, Whitmer focuses upon the words "settlement" and "settled" in the residential coverage conditions. He contends that they limit Graphic's replacement conditions to those instances in which Graphic settles its liability with the insured. In support, Whitmer quotes the following definition of "settle":

A word of equivocal meaning; meaning different things in different connections, and *the particular sense in which it is used may be explained by the context* or the circumstances. Accordingly, the term may be employed as meaning to agree, to approve, to arrange, to ascertain, to liquidate, to come to or reach an agreement, to determine, to establish, to fix, to free from uncertainty, to place, or to regulate.

Black's Law Dictionary 1372 (6th ed. 1990) (emphasis added). One of the several definitions of the word "settle" in another dictionary is "to resolve or judge finally: remove from uncertainty, unclarity or dispute." Webster's Third International Dictionary 2079 (3d ed. 1986).

■ Thus, we construe these words in the context in which they are used. They are used in the context of Graphic's agreement to "pay the full cost to . . . replace . . . in accordance with the replacement conditions stated below." Because Graphic's agreement to pay replacement cost is conditioned upon Whitmer's compli-

ance with "the replacement conditions stated below," it makes no difference whether Graphic's liability for Whitmer's residential replacement cost is determined in a settlement, in an arbitration proceeding, or by a judgment.

■ Considered in context, we conclude that the disputed words are used to denote a determination, establishment, or liquidation of the amount of the loss. Accordingly, we are of opinion that the replacement conditions are applicable to Whitmer's claim and limit him to a claim for the actual cash value of his residence,* unless those provisions are unenforceable for the remaining reasons Whitmer has advanced.

■ Because no reference is made to the words "settlement" or "settled" in the personal property endorsements, even under Whitmer's construction of the disputed words, he could recover only the cash value of his personal property.

## II.

Whitmer's next contention is that Graphic's replacement requirements conflict with several provisions of the standard insurance policy form mandated by Code § 38.2-2105. Therefore, Whitmer claims that the replacement requirements are contractual provisions "less favorable to the insured than the standard policy form" and thus unenforceable as a violation of Code § 38.2-2107. In support, Whitmer cites *State Farm Mut. Auto. Ins. Co. v. Seay*, 236 Va. 275, 280, 373 S.E.2d 910, 913 (1988), and *Virginia Farm Bureau Mut. Ins. Co. v. Jerrell*, 236 Va. 261, 266-67, 373 S.E.2d 913, 916 (1988). In *Seay* and *Jerrell*, however, the disputed policy provisions were mandated by statute. Here, replacement cost coverage is not required by statute to be issued or offered by Graphic, and few of its terms are specified by statute as in *Seay* and *Jerrell*.

■ Indeed, all that insurance companies are required to furnish in connection with their replacement cost endorsements is "a statement summarizing: (i) any minimum coverage requirement necessary for the replacement cost provision to be fully effective, and (ii) the effect on claim payment of not meeting the minimum coverage requirement." Code § 38.2-2118.

---

* The parties agree that if Whitmer cannot recover the replacement value of the destroyed property, he can recover its lower cash value.

Whitmer notes that none of the standard policy form requirements includes an "actual replacement" condition or a provision giving a period of an additional 180 days after the loss in which the insured can make a further claim for his losses. Whitmer concludes, therefore, that Graphic's replacement conditions are in conflict with the standard policy form provisions.

■ However, as Whitmer also notes in his brief, Code § 38.2-2119 specifically allows the inclusion of replacement cost coverage. This code section allows policy endorsements for an insured's indemnification for "the difference between the actual cash value of the property at the time of loss and the *cost of repair or replacement of the property . . . within a reasonable time after the loss*, and without deduction for depreciation." (Emphasis added.) We also note that Code § 38.2-2119(i) contains no reference to an "estimated" cost of replacement. In fact, this code section implies that the property will be replaced given its requirement that the insurance company provide a reasonable time after the loss for property replacement.

Whitmer notes that the standard insurance policy form provides minimum periods for payment of losses after: (1) a settlement and (2) an arbitration award, and that Graphic's policy adds a third minimum payment period of 30 days after a final judgment. This, Whitmer opines, is another reason to invalidate the replacement conditions. However, the standard policy form does not cover those instances in which litigation is necessary because an insured is alleged to have violated a term of the policy, as in this case, thereby forfeiting his right to coverage.

■ Thus, we conclude that Graphic's replacement conditions are "no less favorable to" Whitmer than the standard policy form, and therefore violate none of the cited statutory provisions.

### III.

Finally, Whitmer maintains that Graphic lost its right to require him to replace the property by contesting its liability for any payment on the ground of the alleged arson of the property. He has two reasons for this position.

First, Whitmer claims that Graphic's claim of arson prevented his performance of the replacement condition. Whitmer's premise is that his performance of that condition was dependent upon Graphic's payment of an initial sum representing the cash value of the destroyed property.

Whitmer relies upon *Boggs* v. *Duncan*, 202 Va. 877, 121 S.E.2d 359 (1961), in which the following is quoted, "[i]f the impossibility of performance arises directly or even indirectly from the acts of the promisee, it is sufficient excuse for nonperformance. This is upon the principle that he who prevents a thing may not avail himself of the nonperformance which he has occasioned." *Id.* at 882, 121 S.E.2d at 363.

In *Duncan*, however, a landowner failed in his breach of contract action against a timber cutter who stopped cutting the timber because the landowner ordered the timber cutter off his land before the cutting was finished. Hence, the *Duncan* landowner violated his duty to provide the required access. In contrast, Whitmer can point to no policy provision imposing a duty upon Graphic to tender Whitmer the cash value of his property prior to its replacement. Perhaps such a provision would be advisable, but we cannot rewrite the policy to so provide. *See American Home Assurance Co.* v. *Hughes*, 209 Va. 514, 518, 165 S.E.2d 411, 414 (1969).

Secondly, Whitmer contends that because he did not have the financial ability to replace the destroyed property without prior payment of its actual cash value, Graphic cannot rely upon the replacement condition of the policy. There is no policy provision to support this contention, and it is simply irrelevant.

In sum, we conclude that because Whitmer has not replaced his damaged property, he cannot recover its replacement value. Accordingly, we answer the first part of the question in the negative, and the second part of the question in the affirmative.

*First part of certified question - answered in the negative; second part of certified question - answered in the affirmative.*